# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DAVID AGNETA,

*Plaintiff,*

v.

CAROL MICI, Commissioner of the
Massachusetts Department of Correction;
SERGIO SERVELLO, Superintendent of
Massachusetts Correctional Institution-Cedar
Junction; LEW EVANGELIDIS, Worcester
County Sheriff, and WELLPATH, LLC,

*Defendants.*

CIVIL ACTION NO.

## COMPLAINT AND CLAIM FOR JURY TRIAL

### I.       INTRODUCTION

1.       This action is brought by David Agneta to recover damages he suffered as a result

of Defendants' intentional mistreatment of him as an inmate of the Massachusetts Correctional

Institution-Cedar Junction ("Cedar Junction"). By and through their actions and policies, Mr.

Agneta was subjected to extreme conditions that detrimentally affected his mental and physical

well-being. The extreme conditions Mr. Agneta was subjected to did not further any rational

interest of the correctional facility, its inmates, the correctional staff, or the citizens of the

Commonwealth of Massachusetts. Upon placement in the Department Disciplinary Unit (the

"DDU"), Mr. Agneta was repeatedly held in an isolated cell no larger than 10 feet long by 8 feet

wide for up to 24 hours a day for months on end. Mr. Agneta was further denied any meaningful

review of his status and confinement in DDU and was never provided periodic placement

1

reviews that were legally required. Additionally, Mr. Agneta's health was unreasonably put at

risk when Defendants denied him access to basic sanitary items, failed to properly vaccinate him,

and denied him access to reasonable, adequate, proper, and/or meaningful medical treatment.

The medical contractor for the Cedar Junction and Worcester County House of Corrections

("Worcester HOC") repeatedly minimized Mr. Agneta's health concerns, specifically as they

related to COVID-19 and other respiratory illnesses he contracted while incarcerated at those

institutions.

## II.     PARTIES

2.      Plaintiff, David Agneta, is currently incarcerated at the Worcester House of

Corrections.

3.      Defendant, Massachusetts Department of Correction ("DOC") is an agency of the

Commonwealth responsible for overseeing the Massachusetts prison system. It oversees the

management of 15 institutions across the state.

4.      Defendant Carol Mici ("Commissioner") is the Commissioner of DOC and

responsible for the administration of all state correctional facilities, including overseeing

operations and personnel of DOC statewide. *See* G.L. c. 124, §1. Mr. Agneta sues Commissioner

in her official capacity.

5.      Defendant Sergio Servello ("Superintendent") is the Superintendent of

Massachusetts Correctional Institution at Cedar Junction. Mr. Agneta sues Superintendent in his

official capacity.

6.      Defendant Lew Evangelidis ("Sheriff") is the Worcester County Sheriff and is

responsible for overseeing and managing the Worcester County House of Corrections. Mr.

Agneta sues Sheriff in his official capacity.

2

7.      Wellpath, LLC ("Wellpath") is a health-care company that provides medical services at various correctional facilities throughout the Commonwealth of Massachusetts, including Cedar Junction and Worcester HOC.

### III.      JURISDICTION AND VENUE

8.      The jurisdiction of this Court is lawful pursuant to 28 U.S.C., § 1331.

9.      Venue is proper in this District pursuant to 28 U.S.C., § 1391(b) because all defendants are considered residents of Massachusetts and because a substantial part of the events giving rise to the claims occurred in Massachusetts.

### IV.      FACTS

10.     In February of 2021, Mr. Agneta was transferred to Cedar Junction and placed in DDU.

11.     When Mr. Agneta was housed in DDU, his cell:

    a.      was approximately only 10 feet long by 8 feet wide;
    b.      contained a single bed;
    c.      contained a half sink; and,
    d.      contained a toilet

12.     When Mr. Agneta was housed in DDU, he was confined to his cell for 23 hours a day each weekday and for the entire 24 hours each day of the weekend.

13.     When Mr. Agneta was housed in DDU, he did not receive a meaningful review of whether he was appropriately assigned to the DDU.

14.     Specifically, Mr. Agenta was:

    a.      Mr. Agneta was never afforded a periodic placement reviews;
    b.      Mr. Agneta was never asked to participate in periodic placement reviews; and,
Mr. Agneta was directed to sign off on his placement reviews without attendance or input relative to placement reviews.

15.     While in DDU, Mr. Agneta was rarely allowed any recreational time.

3

16.     For several months, Mr. Agenta was deprived of the use of educational materials to pursue his high school degree.

17.     While subjected to DDU confinement, Mr. Agneta's canteen account was frozen, preventing him from purchasing any items.

18.     Without access to his canteen, Mr. Agneta was deprived of access to basic sanitary items, such as deodorant, toothpaste, and razors.

19.     Because of his DDU confinement, Mr. Agneta was not offered the COVID-19 vaccine in a timely manner. Even though he repeatedly expressed his desire to be fully vaccinated against the virus, he was only given partial vaccination.

20.     While confined in the DDU, Mr. Agneta was not given proper medical treatment.

21.     Specifically:

    a.  Mr. Agneta's prescription for his inhaler was supposedly lost; and
    b.  Without even being tested to confirm his then-current status, Mr. Agneta was
        told that he was cured of Hepatitis and his treatment was terminated.

22.     During his time in DDU, Mr. Agneta attempted to utilize the grievance process, but was often denied access to the appropriate complaint forms and if he did receive a response, which often he did not, the response would not be from the grievance officer pursuant to the grievance protocol.

23.     The grievances that Mr. Agneta did file while in DDU confinement were often received and responded to by personnel other than the grievance officer.

24.     During his time in DDU, no hearings or reviews pursuant to 103 CMR 430.28 and 430.30 were held to determine the appropriateness of his confinement in the DDU or regarding his grievances about the conditions of his DDU confinement, despite notations in the records that he was provided such opportunity.

25.     After being transferred to the Worcester HOC in late 2022, Mr. Agneta continued to receive inadequate medical care.

26.     Upon his arrival at Worcester HOC, Mr. Agneta was assigned to J Block.

27.     All sick inmates – including those suffering from COVID-19 – were also housed in J Block.

28.     J Block was not properly ventilated and serviced by inadequate heating systems.

29.     Compounding this issue was the fact that Mr. Agneta's cell window was broken such that it was unable to open and provide him with access to fresh air.

30.     During his incarceration at Worcester HOC, Mr. Agneta was not allowed to wear a mask, despite having asthma and other respiratory conditions that heightened his risk of exposure to the COVID-19 virus.

31.     Defendants knew of Mr. Agneta's medical condition and that it created a heightened risk to his health in the event he contracted the virus.

32.     As a result of the lack of ventilation and daily exposure to sick individuals without proper personal protective equipment, Mr. Agneta developed Pneumonia and most likely Covid-19 in late 2022.

33.     While suffering from this respiratory illness, Mr. Agneta was not afforded proper care by Wellpath, LLC, the health care provider at Worcester HOC.

34.     Upon information and belief, Wellpath, LLC holds a contract with DOC for the provision of medical services to individuals housed at correctional facilities within Massachusetts.

35.     Wellpath, LLC failed to provide Mr. Agneta reasonable or adequate health care services during his time at Worcester HOC, causing:

      a.   Mr. Agneta to have chronic issues breathing;
      b.   Mr. Agneta to fear death or serious injury due to breathing difficulties; and,

c.  Mr. Agneta to have a persistent illness since his transfer to Worcester HOC.

36.  Upon information and belief, poor ventilation, unsanitary conditions, and continued exposure to very ill people housed at Worcester HOC caused or contributed to Mr. Agneta contracting a respiratory illness, which he still suffers from today.

37.  The food served by Worcester HOC was unsanitary, causing many individuals housed in J Block, including Mr. Agneta, to become extremely ill.

38.  On at least one occasion, the food served by Worcester HOC was clearly spoiled.

39.  On at least one occasion, the food served by Worcester HOC was contaminated by an unknown substance, which emitted a noxious chemical odor.

40.  On that occasion, Mr. Agneta was told not to eat the food by a correctional officer.

41.  As a result of Defendants' conduct, Mr. Agneta was deprived of his right to be free of cruel and unusual punishment.

42.  As a result of Defendants' conduct, Mr. Agneta suffered irreparable harm to his body and health, which still persists today.

43.  As a result of Defendants' conduct, Mr. Agneta has suffered emotional distress.

## Grievances

44.  As a result of Defendants' conduct, Mr. Agneta submitted various grievances in an attempt to remedy this unlawful treatment.

45.  For instance, on or about December 25, 2020, Mr. Agneta filed a medical grievance because he was denied access to medication to treat his hepatitis C. As a result, he was told there was no time frame for treatment and that he would simply be monitored.

46.  On or about November 4, 2021, Mr. Agneta filed a complaint with Cedar Junction requesting that he be provided adequate time outside of his cell. That request was denied.

47.     On or about December 25, 2021, Mr. Agneta filed a medical grievance because he was skipped over for a COVID-19 booster shot. He was told he would receive one at the next appropriate time.

48.     On or about February 12, 2021, Mr. Agneta filed a medical grievance because he was not provided with a COVID-19 vaccination booster shot.

49.     On or about June 5, 2022, Mr. Agneta filed a complaint with Cedar Junction, because he was denied the hour of exercise time he was entitled to receive and time outside of his cell while at DDU. He was denied relief.

50.     On or about March 12, 2023, Mr. Agneta sent a letter to Wellpath's Grievance Coordinator in an attempt to obtain proper medical care as a result of poor conditions at Worcester HOD, including the poor ventilation.

51.     On or about May 10, 2023, Mr. Agneta filed a complaint with Worcester County Sheriff's Office, requesting time outside and maintenance on broken toilets. The request for time outside was denied.

52.     Mr. Agneta filed and attempted to file multiple grievances with Wellpath concerning his health and limited access to proper medical care but was denied access to appropriate care.

53.     In mid-June of 2023, Wellpath employees went as far as to threaten Mr. Agneta with being placed "in the hole" for attempting to gain access to medicinal inhalers, which he had been previously prescribed to assist his breathing.

## COUNT I
### (SECTION 1983 – Violation of Eighth Amendment)

54.     Mr. Agneta hereby re-avers and re-alleges the allegations in Paragraphs 1-53 as if specifically set forth herein and hereby incorporate them by reference.

55.     At all times subject to this Complaint, Mr. Agneta had a right to be free from cruel and unusual punishment as secured by the Eighth Amendment of the United States Constitution.

56.     Defendants, acting under color of law, violated Mr. Agneta's rights by:

   a. subjecting him to oppressive and damaging living conditions;
   b. denying him appropriate healthcare;
   c. denying him meaningful access to grievances and review procedures;
   d. denying him appropriate sanitary items; and,
   e. serving tainted food.

57.     As a proximate and foreseeable result of Defendants' conduct, Mr. Agneta suffered injuries as described herein.

## COUNT II
### (SECTION 1983 – Procedural Due Process)

58.     Mr. Agneta hereby re-avers and re-alleges the allegations in Paragraphs 1-57 as if specifically set forth herein and hereby incorporate them by reference.

59.     At all times subject to this Complaint, Mr. Agneta had a right to submit grievances regarding the conditions of his confinement.

60.     Defendants, acting under color of law, violated Mr. Agneta's rights by not providing him with notice and a reasonable opportunity to be heard.

61.     As a proximate and foreseeable result of Defendants conduct, Mr. Agneta suffered injuries as described herein.

## COUNT III
### (SECTION 1983 – Substantive Due Process)

62.     Mr. Agneta hereby re-avers and re-alleges the allegations in Paragraphs 1-61 as if specifically set forth herein and hereby incorporate them by reference.

63.     At all times subject to this Complaint, Mr. Agneta had a right to be free from

cruel and unusual punishment as secured by the Eighth Amendment of the United States Constitution.

64.     Defendants, acting under color of law, violated Mr. Agneta's substantive due process rights by denying him liberty without adequate justification.

65.     As a proximate and foreseeable result of Defendants conduct, Mr. Agneta suffered injuries as described herein.

**COUNT IV**
**(Art. 16 – Deprivation of Educational Materials)**

66.     Mr. Agneta hereby re-avers and re-alleges the allegations in Paragraphs 1-65 as if specifically set forth herein and hereby incorporate them by reference.

67.     At all times subject to this Complaint, Mr. Agneta had a right to access educational materials.

68.     Defendants denied Mr. Agenta his rights protected by Art. 16 of the Massachusetts Declaration of Rights by denying him access to educational materials.

69.     As a proximate and foreseeable result of Defendants conduct, Mr. Agneta suffered injuries as described herein.

**COUNT V**
**(G.L. c. 127, § 39E – Deprivation of Educational Materials)**

70.     Mr. Agneta hereby re-avers and re-alleges the allegations in Paragraphs 1-69 as if specifically set forth herein and hereby incorporate them by reference.

71.     At all times subject to this Complaint, Mr. Agneta had a right to access educational materials.

72.     Defendants denied Mr. Agenta his rights protected by G.L. c. 127, § 39E by denying him access to educational materials.

73.     As a proximate and foreseeable result of Defendants conduct, Mr. Agneta suffered injuries as described herein.

**MR. AGNETA HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

*Relief*

WHEREFORE, Mr. Agneta requests that this Honorable Court:

1.     Enter Judgment in his favor on all counts of his Complaint.

2.     Award Mr. Agneta compensatory damages from Defendants in an amount to be determined by a jury.

3.     Award Mr. Agneta punitive damages from the Defendants in an amount to be determined by a jury.

4.     Award Mr. Agneta interest, costs and reasonable attorney's fees for bringing this action.

5.     Award the Mr. Agneta such other relief as this Court deems just, equitable, and appropriate.

Respectfully submitted.
By their Attorneys

Tristan P. Colangelo, Esq., BBO# 682202
Hannah N. Konowitz, Esq., BBO # 704592
Kerstein, Coren & Lichtenstein, LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
(781) 997-1600
EMAIL:  tcolangelo@kcl-law.com
EMAIL:  hkonowitz@kcl-law.com

Dated: July 24, 2023